IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| JOHN GAGLIARDI, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | 2:04cv1693 |
| ) | Electronic Filing |
| T. J. KRATZENBERG, Esq., an ) | |
| individual; KRATZENBERG & ) | |
| ASSOCIATES, INC., a close ) | |
| Pennsylvania business corporation; ) | |
| JOEL AARON KLEIN, ) | |
| an individual; IRA WEISS, Esq.; ) | |
| LLOYD H. FUGE, Esq.; ) | |
| ) | |
| Defendants. ) | |

## MEMORANDUM
## AND ORDER OF COURT

Proceeding <u>pro se</u>, John Gagliardi ("plaintiff") filed a complaint on November 8, 2004, purporting to set forth a claim under the Racketeer Influenced Corrupt Organization Act ("RICO") and state law claims for fraud and conspiracy. Defendants are presently or formerly practicing Pennsylvania attorneys and business entities through which one or more of the individual defendants have engaged in the practice of law. Presently before the court are a number of Rule 12(b) (6) motions seeking summary dismissal of the complaint on a variety of grounds. For the reasons set forth below, plaintiff's complaint will be dismissed for failure to present a case or controversy within the meaning of Article III of the United States Constitution, and in the alternative any purported RICO claim will be dismissed with prejudice because the statute of limitations has run on any such claim and the court will decline to exercise supplemental jurisdiction over any state law claim raised by plaintiff's submissions.

Plaintiff's complaint is long on generalizations and rambling suppositional projections, followed by non-sequiturs. Nevertheless, it has been viewed pursuant to the applicable standards governing <u>pro se</u> submissions that are challenged through a motion to dismiss. In order to assure that plaintiff's allegations and submissions were not prematurely assessed with regard to the

alternative disposition on statute of limitations grounds, plaintiff was advised by the court that the motions to dismiss would be treated as ones for summary judgment and given an opportunity to submit any additional information that plaintiff wanted the court to consider in resolving the issues raised. See Doc. No. 25

It is well-settled that in reviewing a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) "[t]he applicable standard of review requires the court to accept as true all allegations in the complaint and all reasonable inferences that can be drawn therefrom, and view them in the light most favorable to the non-moving party." Rocks v. City of Philadelphia, 868 F.2d 644, 645 (3d Cir. 1989). Dismissal of a complaint is proper only where "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim that would entitle him to relief." Conley v. Gibson, 355 U.S. 41, 45-46 (1957); Langford v. City of Atlantic City, 235 F.3d 845, 847 (3d Cir. 2000) (citing Nami v. Fauver, 82 F.3d 63, 65 (3d Cir. 1996)). The question is not whether the plaintiff will ultimately prevail; instead, it is whether the plaintiff can prove any set of facts consistent with the averments of the complaint which would show the plaintiff is entitled to relief. Jordan v. Fox, Rothschild, O'Brien & Frankel, 20 F.3d 1250, 1261 (3d Cir. 1994). Under this standard a complaint will be deemed sufficient if it adequately puts the defendant on notice of the essential elements of a cause of action. Nami, 82 F.3d at 66.

While all factual allegations and reasonable inferences to be drawn therefrom are to be accepted as true, "a court need not credit a complaint's 'bald assertions' or 'legal conclusions' when deciding a motion to dismiss." Morse v. Lower Merior School District, 132 F.3d 902, 906 (3d Cir. 1997) (citations omitted). In ruling on a 12 (b)(6) motion courts consistently have rejected "legal conclusions," "unsupported conclusions," "unwarranted inferences," "unwarranted deductions," "footless conclusions of law" or "sweeping legal conclusions cast in the form of factual allegations." Id. at n.8 (citing in support Charles Allen Wright & Arthur R. Miller, FEDERAL PRACTICE AND PROCEDURE § 1357 (2d ed. 1997), Leeds v. Meltz, 85 F.2d 51, 53 (2d Cir. 1996) ("while the pleading standard is a liberal one, bald assertions and conclusions

2

of law will not suffice") and Fernandez-Montes v. Allied Pilots Ass'n., 987 F.2d 278, 284 (5th Cir. 1993) ("Conclusory allegations or legal conclusions masquerading as factual conclusions will not suffice to prevent a motion to dismiss.")).

It also is well settled that the Federal Rules of Civil Procedure establish very liberal notice requirements governing the necessary contents of a complaint. Rule 8(a) provides in pertinent part:

> A pleading which sets forth a claim for relief ... shall contain (1) a short and plain statement of the grounds upon which the court's jurisdiction depends ... [and] (2) a short and plain statement of the claim showing that the pleader is entitled to relief ... .

Fed. R. Civ. P. 8(a). These standards generally are deemed satisfied where the plaintiff sets forth facts that serve to put a defendant on notice of the nature of the claim for relief and the basis upon which it rests. Burks v. City of Philadelphia, 904 F.Supp. 421, 423-24 (E.D. Pa. 1995) (citing, inter alia, Rannels v. S. E. Nichols, Inc., 591 F.2d 242, 245 (3d Cir. 1979)). Furthermore, pleadings filed by pro se litigants are to be construed liberally. McNeil v. United States, 508 U.S. 106, 113 (1993); Higgins v. Beyer, 293 F.3d 683, 688 (3d Cir. 2002). And in such circumstances the court has an obligation to "apply the applicable law, irrespective of whether a pro se litigant has mentioned it by name." Higgins, 293 F.3d at 688 (quoting Holley v. Dept. of Veterans Affairs, 165 F.3d 244, 247-48 (3d Cir. 1999)).

But the above-referenced standards are not to be read as a license to excuse or overlook procedural shortcomings in pleadings submitted by those who choose to represent themselves. McNeil, 508 U.S. at 113 ("we have never suggested that procedural rules in ordinary civil litigation should be interpreted so as to excuse mistakes by those who proceed without counsel"). Thus, a complaint drafted without the benefit of counsel nevertheless must comply with Federal Rule of Civil Procedure 8(a). And "[w]hile Fed. R. Civ. P. 8(a)(2) requires only a 'short and plain statement of the claims showing that the pleader is entitled to relief,' Rule 12(b) (6) is not without meaning." Krantz v. Prudential Investments Fund Management, 305 F.3d 140, 142 (3d

3

Cir. 2002). It follows that in order to comply with the applicable pleading standards "more detail is often required than the bald statement by plaintiff that he has a valid claim of some type against defendant." Id. at 142 - 43 (quoting 5A Charles A. Wright and Arthur R. Miller, FEDERAL PRACTICE AND PROCEDURE § 1357 at 318 (2d ed. 1990)).

The gravamen of plaintiff's complaint is that defendants have unjustly attempted to collect taxes and fees imposed upon real estate situated within Allegheny County and undertaken efforts to acquire the right to and collect delinquent taxes notwithstanding actual or implied knowledge that the asserted tax deficiencies and resulting indebtedness stem from erroneous factual descriptions of the property, which repeatedly has led to inaccurate and miscalculated assessment values. Plaintiff asserts that an ongoing and coordinated enterprise can be inferred from the conduct referenced in his complaint "because despite years of efforts to acquaint particular tax collection functionaries of the Defendants with the facts of the ongoing miscalculation of tax indebtedness, your Plaintiff has to perennially renew his explanations to subordinates who appear to acquire no background information from the enterprises used in the Defendants' fraudulent scheme." Complaint at ¶ 98. The coordinated and ongoing acts of the enterprise have resulted in "the systematic imposition of erroneously calculated and unjustly assessed and unjustly collected taxes and fees per real property, along with the imposition of encumbrances that render the pledge of considerable property impossible, along with damages to your Plaintiff's cash flow and ability to continue a livelihood from businesses affected by the Defendants' activities." Id. at ¶ 97.

Specifically, plaintiff avers that he obtained a parcel in Jefferson Hills Borough of Allegheny County known as lot and block number 658-M-50, which is the reality subject to the tax assessments in this action ("the subject property"). Id. at ¶ 16. Plaintiff obtained the subject property by deed in 1970. It was comprised of 46 acres. Id. at ¶¶ 17-18. Plaintiff deeded the parcel to U.S. Industrial Fabricating, Inc., on September 10, 1973, and recorded the deed. Id. at ¶ 19. In November of 1974 plaintiff again deeded the same property to U.S. Industrial Fabricators,

Inc., and recorded the deed. A portion of the parcel comprising five acres also was conveyed to McKeesport Industrial Development Authority by recorded deed on November 29, 1974. Id. at ¶ 21. This parcel contained two of the three warehouses originally located on the parcel. See Exhibit I to complaint. This portion became known as Lot and Block number 658-M-75. Complaint at ¶ 22.

Records pertinent to the tax assessment of lot and block 658-M-50 have described the subject property as "vacant property" known as 191 Wall Road. Id. at ¶ 23. Notwithstanding this description, at all pertinent times the property contained a 100 by 200 foot metal panel warehouse building know as Building No. 1 of 191 Wall Road in the USI Park on Wall Road in Jefferson Hills Borough. Id. at ¶ 23. "Since 1976, the municipal reality taxes of the plaintiff and/or his corporation have been incorrectly calculated to produce assessments that have been recurrently false and misleading, and frequently on their face." Id. at ¶ 24. As a result of these inaccurate discrepancies, county taxes, borough taxes, and school district taxes were rendered inaccurate and plaintiff declined to pay any of the taxes for the years 1976 and 1977. Id. at ¶ 25. On June 4, 1999, the West Jefferson Hills School District caused a scire facias proceeding to be commenced against the then owner of the subject property based on unpaid tax liens recorded against the subject property for various years reflecting delinquent unpaid taxes and costs totaling $184,573.86. Id. at ¶ 26.

The scire facias proceeding was filed by defendant attorney Joel Aaron Klein and named as defendant the recorded title owner of the subject property since 1990, plaintiff's ex-wife Dawn Gagliardi. Id. at ¶ 31; Exhibit E to the complaint. A scarie facias precipe was issued by the Court of Common Pleas of Allegheny County on August 3, 2000, to plaintiff with notice to his heirs and assigns as owners or "reputed owners" of the subject property, which was described as vacant property. Id. at ¶ 31; Exhibit E to the Complaint. It reflected a delinquency of $84,485.16 for unpaid taxes stemming from at least calendar years 1976, 1977, 1992, and 1994 through 1997. Exhibit E to the Complaint.

5

In 1990, the Allegheny County Department of Tax Claims and Revenue Director, George Brawn, acknowledged to plaintiff that the subject property had been improperly assessed based upon an excessive number of structural improvements believed to be within the premises and therefore a new evaluation was noted on the tax receipts for 1988, 1989, and 1990, each of which was stamped "exonerated corrected assessment." Complaint at ¶34; Exhibit P to Complaint. "It is believed and therefore averred that the [exonerated corrected assessments] were not formalized by the County Law Department due to the actions or inactions of [defendant] Ira Weiss who during that period served as County Solicitor." Id. at ¶ 35. Plaintiff made repeated requests to Weiss to correct the description of the subject property, but Weiss failed to correct the erroneous description and as a result the taxes continued to be assessed in a manner failing to reflect the true value of the property. Id.

On April 30, 2003, the Elizabeth Forward School District filed a lawsuit against Dawn Gagliardi for delinquent reality taxes and obtained a judgment from the District Justice Office held by the Honorable Ernest Marraccini on June 4, 2003. Notice of execution sale and notice to Dawn Gagliardi were delivered to the household of Dawn Gagliardi at 210 Grouse Drive, Elizabeth, PA, on October 22, 2004. Id. at ¶ 45. Included with that notice was a sheet of paper indicating that inquiry should be made with "Keystone Collection," an entity through which defendant Attorney Kratzenberg has attempted to collect past due taxes and assertedly has participated in the purported RICO scheme identified in plaintiff's complaint. Id. at ¶¶ 46-48.

Defendants engaged in a RICO enterprise by usurping the role of state actors and continuing to pursue collection of delinquent tax assessments notwithstanding the disclosure/or acquisition of information indicating the tax indebtedness arose from inaccurate and mischaracterized information used to calculate the tax assessments. Id at ¶¶ 80-86, 94-97, 130. Predicate acts include "the privatized tax collection efforts of defendants [that] are being peddled to the governing officials of desperate local municipalities with various direct and indirect forms of bribery," the advancing of extortionate extensions of credit to pay such erroneous tax

indebtedness, efforts to conceal the fraudulent nature of the scheme, possible witness tampering and efforts to obtain control of property through what appear to be legitimate transactions and undertakings to impose and collect local, county, municipal and school taxes. Id. at ¶¶ 118-130.

Defendants contend plaintiff's submissions suffer from a whole host of substantive and procedural deficiencies, any one of which warrant dismissal plaintiff's complaint. Two matters raised by one or more of the defendants demonstrate the inability of plaintiff to maintain a RICO claim: (1) plaintiff's attempt to stand on the rights of others; and (2) the untimeliness of any purported RICO claim advanced in plaintiff's submissions. Because each of these grounds provide an independent basis for the dismissal which all defendants seek, the court need not address the myriad of alternative grounds which likewise appear to mandate dismissal of plaintiff's complaint.

"Article III of the Constitution restricts the 'judicial power' of the United States to the resolution of 'cases' and 'controversies'". UPS Worldwide Forwarding, Inc., v. U.S. Postal Service, 66 F.3d 621, 625 (3d Cir. 1995), cert. denied, 516 U.S. 1171 (1996) (citing Valley Forge Christian College v. Americans United For Separation of Church & State, Inc., 454 U.S. 464, 471 (1982). Cases and controversies are restricted to disputes initiated by "a litigant having 'standing' to challenge the actions sought to be adjudicated in the lawsuit." Id. In order to have standing, a litigant must satisfy the constitutional and prudential components which are required in order to seek redress in federal court. Id. (citing Wheeler v. Travelers Ins. Co., 22 F.3d 534, 537 (3d Cir. 1994)).

The Supreme Court has summarized the three components necessary to satisfy "the irreducible constitutional minimum of standing" as follows:

> First, the plaintiff must have suffered an "injury in fact" - an invasion of a legally detected interest which is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical. Second, there must be a causal connection between the injury and the conduct complained of .... Third, it must be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision.

Id. (quoting United States v. Hays, 515 U.S. 737, 742-44 (1995).

"In addition to Article III standing requirements, federal courts have developed prudential standing considerations 'that are part of judicial self government.'" Id. (quoting Lujan v. Defenders of Wildlife, 504 U.S. 555, 560 (1992)). The prudential standing rules require that:

(1) A litigant "assert his [or her] own legal interests rather than those of third parties;"

(2) courts refrain from adjudicating "abstract questions of wide public significance which amount to generalized grievances;" and

(3) a litigant demonstrate that her interests are arguably in "the zone of interests" intended to be protected by the statute, rule or constitutional provision on which the claim is based.

Id. (quoting Wheeler, 22 F.3d at 538. "The rules of standing, whether as aspects of the Article III case - or - controversy requirement or as reflections of prudential considerations defining and limiting the role of the courts, are threshold determinations of the propriety of judicial intervention. It is the responsibility of the complainant clearly to allege facts demonstrating that he is a proper party to invoke judicial resolution of the dispute and the exercise of the court's remedial powers." Bender v. Williamsport Area School District, 45 U.S. 534, 546 n. 8 (1986) (citing Warth v. Seldin, 422 U.S. 490, 517-18 (1975)).

The record before the court in the instant matter clearly demonstrates that plaintiff seeks to stand on the rights of others. All asserted acts performed by defendants were directed at tax payers other than plaintiff. Plaintiff deeded the subject property to U. S. Industrial Fabricators, Inc., on November 29, 1974, and recorded the same in the county recording system. Complaint at ¶ 20. Thus, Industrial Fabricators remained the title owner and tax payer until plaintiff's ex-wife, Dawn Gagliardi, succeeded to ownership as a successor in title some time prior to April 20, 1990. Id. at ¶¶ 26, 30, Exhibits E, L & M to Complaint. The tax records submitted by plaintiff demonstrate clearly that at all time pertinent the record owner and thus the liable tax payer for all assessments alleged to be inaccurate, false or misleading was U.S. Industrial Fabricators, Inc., and/or Dawn A. Gagliardi and her two sons John and Lee. Exhibits L, M, N and O to Complaint.

Plaintiff's submissions make clear that he cannot claim to have actual deeded ownership of the subject property at anytime during the events in question. And while plaintiff was named as a "reputed" owner of the property in the scrie facias proceeding commenced by West Jefferson Hills School District, the named defendant in that proceeding was of course the property owner, Dawn Gagliardi. Exhibits E and F to Complaint. Similarly, when defendant Attorney Kratzenberg initiated a lawsuit on behalf of Elizabeth Forward School District for delinquent reality taxes, the proceeding was commenced against Dawn Gagliardi. Complaint at ¶ 45. Execution sales and notices to defend likewise have been initiated against and served on the property owner, Dawn Gagliardi. Exhibits Y, Z and AA to Complaint.

Plaintiff's attempt to predicate a RICO action based upon the inaccurate descriptions of property belonging to others and the enforcement proceedings to collect back taxes from those individuals/entities violates the basic prudential component of Article III standing requiring a litigant to assert his or her own legal interests rather than those of third parties. The record likewise demonstrates that plaintiff has not truly suffered an "injury in fact" from the defendant's asserted conduct because any legally protected interests invaded by the defendants' conduct belonged to those who owned the property and faced the consequences of defendants' collection efforts. Plaintiff's assertion that defendants' actions have effectively disabled him from using his property for business and personal loans is precisely the type of conjectural or hypothetical injury which fails to meet the constitutional minimum required for standing. Consequently, plaintiff lacks standing to pursue any purported RICO claim set forth in the complaint.

But even assuming for the purpose of argument that plaintiff's status as an officer or director of Industrial Fabricators, Inc., is sufficient to meet the constitutional and prudential requirements for Article III standing, plaintiff's allegations and the exhibits attached to the Complaint demonstrate that the limitations period governing any purported RICO claim based on the conduct identified in the complaint has long ago expired. Accordingly, any purported RICO claim presented in the complaint will be dismissed with prejudice and the court will decline to

exercise supplemental jurisdiction over any state law claim presented by plaintiff's submissions.

Prior to the Supreme Court's decision in Klehr v. A.O. Smith Corp., 521 U.S. 179 (1997), the United States Court of Appeals for the Third Circuit applied a "last predicate act" exception to the commonly utilized "injury and pattern discovery rule" for the determining the accrual of RICO claims. Prudential Insurance Co. v. United States Jypsum Co., 359 F.3d 226, 233 (3d Cir. 2004). The Supreme Court rejected the use of that exception on the ground that it would result in a limitations period longer than that which Congress could have contemplated and would permit claimants to recover for injuries outside the limitations period by "boot strapping" them on to later and independent acts. Id. (citing Klehr, 521 U.S. at 187-90). Subsequently, the Supreme Court also rejected the "injury and pattern discovery rule" itself in Rotella v. Wood, 528 U.S. 549 (2000). Under this rule the statute of limitations began to run when a plaintiff knew or should have known of each element of a civil RICO claim: the injury, the source of the injury, and the pattern of activities prohibited by RICO causing the injury. Prudential Insurance Co., 359 F.3d at 233 (citing Rotella, 528 U.S. at 554).   Following Rotella, the United States Court of Appeals for the Third Circuit adopted the "injury discovery rule" as the governing standard for determining statute of limitations issues in civil RICO claims. Forbes v. Eagleson, 228 F.3d 471, 484 (3d Cir. 2000). This approach requires the court to "determine when the plaintiffs knew or should have known of their injury." Prudential Insurance Co., 359 F.3d at 233 (quoting Forbes, 228 F.3d at 484). "In addition to the injury, the plaintiffs must also have known or should have known of the source of their injury." Id. Nothing more is required to trigger the running of the four-year limitations period governing a civil RICO claim. Id.

Plaintiff contends to have been injured from the "false and misleading encumbrances to real title" which have prevented and discouraged him and his family from seeking financial assistance through lending institutions. Complaint at ¶ 49. He explains his injury in detail as follows:

> The direct causal relationship between the injury and
> the RICO violation is because of the cloud and slanders of

10

>   title placed upon the real property of the plaintiff, your plaintiff
>   has been effectively disabled from using his property for business
>   and personal loans as well as personal bail bond.

Complaint at ¶ 87. Plaintiff also describes the violations of 18 U.S.C. § 1962(d) as follows:

>   The injury to business or property is: the systematic imposition
>   of erroneously calculated and unjustly assessed and unjustly collected
>   taxes and fees per real property, along with the imposition of
>   encumbrances that render the pledge of considerable property
>   impossible, along with damages to the plaintiff's cash flow and
>   ability to continue a livelihood from businesses affected by the
>   defendants' activities.

Complaint at ¶ 97. Plaintiff further avers that in 1990, exonerated corrected assessments for years 1988, 1989 and 1990 were acknowledged by the Director of Allegheny County Tax Claims and Revenue, but county records thereafter remained inaccurate after repeated requests by plaintiff to Ira Weiss "who during that period served as County Solicitor." Complaint at ¶ 35.

The above demonstrates that plaintiff was well aware of the inaccurate description of the subject property and the concomitant over assessment of local and school real estate taxes well before 1990. Plaintiff admits that the subject property was incorrectly described "since 1976" and false and misleading tax assessments have recurrently been produced thereafter. Complaint at ¶ 24. Plaintiff's family members were sued by the Borough of Jefferson in an effort to collect back due taxes as assessed pursuant to the exonerated corrected assessments in 1992. Exhibit O to Complaint. As of that date, plaintiff necessarily obtained notice sufficient to warrant further inquiry concerning (1) any ongoing inaccurate description of property in the county assessment records and/or (2) the assertedly misleading and false tax assessments. Tax liens based on the inaccurate assessments were thereafter entered for tax years 1992 and 1994 through 1997. Exhibit F to Complaint. Plaintiff thus knew or should have known of his injury and the source of his injury as of the date the 1992 lien was recorded against the subject property, April 21, 1994. See Exhibit F to Complaint. In fact, plaintiff admits that he made repeated requests to defendant Ira Weiss in the early 1990's to correct the description of the land and despite these repeated requests it had not been corrected. A collection action was initiated by another defendant to

11

collect "unpaid taxes and various costs totaling $184,573.8" based upon delinquent tax deficiencies entered as separate liens against the property on August 9, 1996, July 11, 1997, June 4, 1998, and December 21, 1999. Complaint at ¶ 26; Exhibit F to Complaint. It follows that plaintiff was also thus aware of the source of his claimed injury no later than August 9, 1996, when a lien was entered against the subject property based on the erroneous uncorrected and assertedly false assessment. At this point plaintiff had sufficient information to recognize that there was a systematic imposition of taxes on the property based on the actions of public officials, liens were being entered to secure the delinquent taxes owed, and the informal efforts of plaintiff to correct the amounts owed were not resulting in formal action by those in charge of collecting back due taxes. Because nothing more than the injury and the source of the injury need to be shown to trigger the accrual of the limitations period, the four-year limitations period governing any purported RICO claim in plaintiff's complaint began to run no later than August 9, 1996, and expired well before November 8, 2004. Exhibit F to Complaint.

Plaintiff maintains that his RICO claim is not time barred due to the application of equitable tolling and, more specifically, "a genuine dispute of material fact as to whether the fraudulent concealment exception applies to [the] statute of limitations." Plaintiff's Response to the Weiss Motions (Doc. No. 29) at 10. Plaintiff's position is untenable.

"The Supreme Court has stated that to equitably toll the running of the limitation period in the civil RICO context by claiming fraudulent concealment, plaintiffs must have exercised 'reasonable diligence' to discover their claim." Prudential Insurance Co., 359 F.3d at 238 (citing Klehr, 521 U.S. at 194). In order to invoke the doctrine of equitable tolling and avoid summary judgment, "there must be a genuine issue of material fact as to whether the [plaintiffs] exercised reasonable due diligence in investigating their claim." Id. (quoting Matthews v. Kidder, Peabody & Co., 260 F.3d 239, 257 (3d Cir. 2001)).

In order for the doctrine of fraudulent concealment to be a basis for equitably tolling a civil RICO limitations period, the record must be capable of establishing three elements: (1) there

must be sufficient evidence to support a finding that defendants engaged in affirmative acts of concealment designed to mislead the plaintiffs regarding the facts supporting their claim; (2) there must be sufficient evidence to support a finding that plaintiffs exercised reasonable diligence, and (3) plaintiffs must be able to prove that they were not aware, nor should they have been aware, of the facts supporting their claim until a time within the limitations period as measured backward from the date the complaint was filed. Forbes, 228 F.3d at 487; Prudential Insurance Co., 359 F.3d at 238.

Plaintiff's submissions to the court demonstrate clearly that plaintiff failed to exercise reasonable diligence in ascertaining the existence of his injury and its source. It likewise demonstrates that plaintiff should have been aware of the facts supporting his claims years before November 8, 2000.

Plaintiff expressly alleges that after corrected tax assessments were made and tax records were issued with the notation "exonerated corrected assessment" for 1988, 1989 and 1990, plaintiff made requests to the county solicitor, defendant Weiss, to described the subject property in a true and correct manner. Complaint at ¶¶ 34-35. Despite these requests, plaintiff avers that Weiss permitted and authorized the erroneous descriptions to continue, notwithstanding the known falsity of records. Complaint at ¶ 35. As the reputed owner of the property and sole officer of the corporate entity that was the recorded owner, plaintiff had a duty to exercise reasonable diligence in pursuing avenues for correcting the description and/or ascertaining that all available legal avenues for changing the description of the subject property in the county's tax assessment records were unavailing.[1] Plaintiff has failed to aver that any formal correction action

---

[1] Under Pennsylvania law property assessments are controlled in the first instance by state law and secondly by city and county classifications. See 72 P. S. § 5020-402(a); 53 P. S. § 46301; 72 P. S. § 5452.1. School districts and boroughs are required to rely on county assessments for the collection of school and local taxes. 72 P. S. § 5020-402(a). The power to make or adjust assessments on property within school districts and boroughs in Allegheny County lies with the Board of Assessment for Allegheny County. See Leopold Industries Inc., v. Toanone, 310 A.2d 440 (Pa. Commw. 1973 and 72 P. S. § 5342 (creating board of assessment for Allegheny County). In this system the "assessment of property is a function over which [school districts

13

was taken through the legal channels available to all property owners of Allegheny County at any time after 1990 when his repeated informal requests to Weiss failed to result in a true and correct description of the subject property. Nor has plaintiff come forward with any evidence indicating that proceedings before the County Assessment Board were exhausted after tax liens were recorded against the property on April 21, 1994, August 9, 1996, July 11, 1997, June 4, 1998 and so forth, based on the ongoing false and misleading description that had not been corrected.

By failing to pursue proper avenues of relief through the County Board of Assessment and Appeals and/or failing to investigate and challenge through proper channels the tax liens regularly recorded against the property after April 21, 1994, plaintiff has foreclosed any attempt to demonstrate that he exercised reasonable diligence in discovering or investigating the injuries upon which he founds his RICO claim. The failure of his repeated informal requests to various county officials to result in corrective measures placed him on "inquiry notice" of such injuries and triggered the need to take formal measures to correct the description of the subject property. Compare Prudential Ins. Co., 359 F.3d at 238 ("As the discussion above shows, irrespective of defendants' attempt to conceal from Prudential the hazards posed by ACMs in Prudential's buildings, Prudential had many other sources of information sufficient to place it on inquiry notice of such ACM-related inquiries.") Had plaintiff pursued such avenues at that time, he would have either corrected the underlying injury or become aware of the source of his alleged RICO injury at a time well before the applicable limitations period as measured backwards from the filing of his complaint. Consequently, plaintiff cannot establish a genuine issue to support a finding that he was not aware, nor should he have been aware, of the facts supporting his RICO claim prior to November 8, 2000. Consequently, plaintiff's RICO claim is time barred.

---

have] no legal power or authority; rather, the power is reserved to the County Assessment authority." Atlantic City Electric Co., v. United School District, 780 A.2d 766, 771 (Pa. Commw. 2001). Property owners who believe their existing assessments are inaccurate have the right to appeal the existing assessment to the Board of Assessment and Appeals in the county in question. 72 P. S. § 5349(c).

14

Plaintiff lacks standing to pursue his RICO claim against any of the defendants, and, in the alternative, any purported RICO claim advanced by plaintiffs is untimely as a matter of law. Because these defects in plaintiff's RICO claim cannot be cured by amendment, the court will dismiss the claims in plaintiff's complaint for lack of standing, and, in the alternative, dismiss the RICO claim with prejudice and decline to exercise supplemental jurisdiction over any state law claim encompassed within plaintiff's complaint. An appropriate order follows.

## ORDER OF COURT

AND NOW, this 15th day of September, 2005, for the reasons set forth in the above memorandum, IT IS ORDERED that the claims in plaintiffs' complaint be, and the same hereby are, dismissed for failure to present on Article III case or controversy, and, in the alternative, plaintiff's Racketeer Influence Corrupt Organizations claim be, and the same hereby is, dismissed with prejudice and any purported state law claim presented is dismissed without prejudice pursuant to 28 U.S.C. § 1367(c). The clerk shall close this case.

*/s/ David Stewart Cercone*
David Stewart Cercone
United States District Judge

cc: John Gagliardi
191 Wall Road
Jefferson Hills, PA 15025

James R. Schadel, Esquire
Weinheimer, Schadel & Haber, P.C.
602 Law and Finance Building
429 Fourth Avenue
Pittsburgh, PA 15219

Dennis J. Roman, Esquire
Janet K. Meub, Esquire
Grogan Graffam, P.C.
Four Gateway Center, 12th Floor
Pittsburgh, PA 1522245

John E. Quinn, Esquire
Evans Portnoy Quinn & O'Connor
One Oxford Centre, 36th Floor
Pittsburgh, PA 15219